UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALYSSA GORMAN, on behalf of herself and all others similarly situated, <br><br> Plaintiff(s), <br> v. <br><br> EXAMONE WORLD WIDE INC. and QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., <br><br> Defendant(s). | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br> **JURY TRIAL DEMAND** |

## I. PRELIMINARY STATEMENT

Plaintiff, Alyssa Gorman, brings this action on her own behalf and on behalf of all other persons similarly situated against Defendants, ExamOne World Wide Inc. ("ExamOne") and Quest Diagnostics Clinical Laboratories, Inc. ("Quest Diagnostics"), (hereinafter referred to collectively as "Defendants") based upon Defendants' widespread violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). Defendants violate the important protections in the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the consumer reports they prepare and disseminate in connection with consumers' applications for insurance. Specifically, Defendants regularly include on such reports, prescription and other medical history that does not pertain to the individual who is the subject of the report.

Defendants systemically fail to clearly and accurately identify to consumers the source(s) of the information that they place on their consumer reports. Defendants thus deprive consumers of valuable congressionally mandated information and make it more difficult for consumers, such as Plaintiff, to correct errors that are caused by private vendor sources, rather than the pharmacies

and medical providers that Defendants misidentify as their sources. Defendants' conduct deprives consumers of their rights under federal law and results in widespread harm.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 because this case raises a federal question under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants do business in this district.

## III. PARTIES

4. Plaintiff, Alyssa Gorman, is an adult individual who resides in Tallahassee, Florida.

5. Defendant, ExamOne World Wide Inc., is a Pennsylvania company that has principal places of business at 500 Plaza Dr, Secaucus, New Jersey, 07094 and Lenexa, Kansas, and which regularly conducts business in the State of Florida.

6. Defendant, Quest Diagnostics Clinical Laboratories Inc., is a Delaware company headquartered in Secaucus, New Jersey.

## IV. FACTUAL ALLEGATIONS

**A. Through ExamOne, Defendants' reports regarding consumers' prescription and medical history.**

7. Acting in concert, Defendants are a specialty consumer reporting agencies ("CRA") in the business of gathering and selling reports about consumers which contain information about their medical histories, including detailed histories of medications prescribed by doctors

onto a "Intelliscript Prescription Profile" and medical conditions onto "LabPiQture" reports.

8. Defendants' prescription profile and reports are highly detailed; contain prescription histories include drug name, dosage, fill date, pharmacy, and physician information, in addition to an entire medical reporter providing details about diseases, or conditions about the consumers.

9. ScriptCheck reports furthermore purport to identify whether the individual who is the subject of the report took the medications as prescribed, e.g. "drug compliance."

10. Defendants prepare ScriptCheck reports by gathering information from "some of the largest pharmacy benefits management (PBM) companies in the country" in order to provide what they call a more "comprehensive review of your applicant's prescription drug history."

11. In addition to obtaining prescription history information from third party "PBM" companies, Defendants also obtain information from other data contributors, such as Medical Information Bureau ("MIB").

12. In addition to compiling this prescription history data from their sources into a single report, Defendants also interpret the data, summarize and assemble it, and provide color-codes and shapes/icons on the report, which categorize the prescription records into several categories (red, yellow or green, and/or circles and triangles) associated with health conditions.

13. Furthermore, besides categorizing the prescriptions, Defendants provide risk/probability indicators and scores for both medications and medical conditions which they create, communicating that an individual is a higher risk for insurance purposes if they see a particular provider.

14. Defendants prepare and sell these reports for a fee to insurance companies in connection with an application for life insurance.

**B. Defendants fail to accurately report consumer information.**

15. Defendants are regulated by the FCRA, and the reports they sell are consumer reports which they intend to be used to determine consumers' eligibility for insurance.

16. Defendants compile reports and respond to consumer inquiries using standardized policies and procedures, and do not "reinvent the wheel" with respect to each individual report or communication.

17. Defendants represent that their ScriptCheck reports provide "the most complete and accurate picture of your applicant's prescription claims history."

18. But Defendants regularly fail to ensure the most basic test of accuracy: that the medications listed on its reports were in fact prescribed to the applicant.

19. Defendants sell inaccurate ScriptCheck reports due to their failure to follow reasonable procedures to assure the maximum possible accuracy regarding the information they sell about consumers. See 15 U.S.C. § 1681e(b).

20. One of the most well-known and prevalent inaccuracies that occur in the consumer reporting industry is a "mixed file."

21. A "mixed file" is a consumer report in which some or all of the information in the report pertains to an individual who is not the subject of the report.

22. Defendants employ policies and procedures that frequently allow information belonging to one consumer to appear in the consumer file of another.

23. Defendants employ procedures to maximize the number of reports which contain information, accurate or not.

24. Defendants' reporting of inaccurate information is not accidental, nor a result of simple negligence, but instead a result of deliberately designed policies and procedures.

**C. Defendants fail to disclose the true source(s) of their prescription information.**

25. Defendants compound the harm caused by their inaccurate reporting by concealing the identities of the third-party sources from which they obtain prescription records, impairing consumers' ability to correct inaccuracies and prevent further inaccurate reporting of such records.

26. Defendants purport to comply with the disclosure requirement of FCRA section 1681g(a), by providing consumers with information in their file in response to requests by consumers.

27. However, in their disclosures of information to consumers, Defendants fail to identify the source(s) from which they obtain information, including pharmacy benefit managers and other "data contributors."

28. Thus, consumers have no way of knowing whether a particular item of information was retrieved directly from a pharmacy, from a pharmacy benefit manager, from a "data contributor" or even from another consumer reporting agency (CRA), and thus consumers cannot determine the true origin of the data Defendants sell about them and dispute any inaccuracies directly with the source(s) of it.

29. The addition of a pharmacy benefit manager, other CRA and/or vendor into the chain of information introduces another opportunity for errors, including in personal identifying information which can cause information to be placed in the wrong consumer's file.

30. The fact that information was obtained from a pharmacy benefit manager is essential for a consumer to properly address any inaccurate reporting, so that a consumer can determine

whether an error originated with the pharmacy or with a third party and ensure that any pharmacy benefit manager or other vendor does not further spread the error.

31. The FCRA unambiguously requires CRAs such as Defendants, upon request, to "clearly and accurately disclose to the consumer," among other things, "the sources" that supplied any "information" to the CRA about that consumer. 15 U.S.C. § 1681g(a)(2).

32. Disclosure of the true source from which a CRA obtained information is vital so that consumers always know who is furnishing important information about them, and which can allow them to prevent errors that originated with the source from spreading to other CRAs and being misreported in the future.

33. Nevertheless, and despite the clear mandate of FCRA § 1681g(a)(2), Defendants fail to disclose to consumers the pharmacy benefit managers and other sources of information that it collects and reports about them.

**D. Plaintiff Gorman's experience.**

34. Plaintiff is a consumer about whom Defendants sold inaccurate prescription and medical history information, to whom Defendants failed to disclose information as required by the FCRA.

35. In or around February of 2024, Plaintiff applied for health insurance with Freedom Life Insurance Company of America Freedom ("Freedom").

36. In connection with Plaintiff's application, Freedom requested a consumer report from Defendants about Plaintiff, including her prescription history as well as medical conditions. Freedom provided Defendants with Plaintiff's first and last name, social security number, and full date of birth.

37. On or about February 15, 2024, Defendants prepared a report about Plaintiff, including diagnosis, prescription history, prescriber information, drug compliance data, and associated risk indicators, and sold it to Freedom for a fee.

38. Upon information and belief, Defendants obtained information that they placed on the report from one or more pharmacy benefit managers and other "data contributors."

39. The February 15, 2024, report was grossly inaccurate.

40. The report indicates that Plaintiff has seven (7) medical conditions as follows: leiomyoma of uterus; type 2 diabetes mellitus; hyperlipidemia; anxiety; posttraumatic disorder; and migraines. However, Plaintiff does not have any of these medical conditions and does not take any medication for them.

41. In addition, there were other claims made against Plaintiff regarding seeking medication from different doctors at different pharmacies, which is false.

42. On or about February 15, 2024, Freedom denied Plaintiff's application for health insurance because of the inaccurate ExamOne report.

43. When Plaintiff learned she had been denied because of the ExamOne report, she was shocked and concerned. Plaintiff immediately contacted Freedom and requested a copy of the ExamOne report.

44. The copy of the report itself did not identify the source(s) from which Defendants obtained any of the information included in the report.

45. Notwithstanding the FCRA's requirements, Defendants deprived Plaintiff of this valuable information according to their standard practice and procedure.

46. After receiving the copy of the inaccurate report, Plaintiff contacted Defendant, ExamOne on or about December 13, 2024, to dispute the accuracy of the report, specifically identifying each inaccurate record.

47. However, Defendant, ExamOne failed to respond at all to Plaintiff's dispute and never removed the inaccurate and false information from her report..

48. As a result of Defendant, ExamOne's, failure to remove the inaccurate and false information from their report, Plaintiff was unable to obtain affordable health insurance with Freedom nor with any other health insurance provider.

49. Defendants' preparation of the February 15, 2024, report delivered to Freedom is consistent with Defendants' intentionally-adopted policies and procedures, and were not the result of error or mistake.

50. At all times pertinent hereto, Defendants' conduct was a result of their deliberate policies and practices, was willful, and carried out in reckless disregard for a consumer's rights as set forth under § 1681e(b) and § 1681g(a)(2) of the FCRA, and further assumed an unjustifiable high risk of harm.

51. As of result of Defendants' conduct, Plaintiff has suffered damages in the form of (a) loss of insurance opportunity, (b) harm to reputation, (c) time spent to resolve the problem, (d) emotional distress, and (f) denial of statutorily mandated information necessary to prevent future misreporting.

52. At all times pertinent hereto, Defendants were acting by and through their agents, servants and or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants.

**V. CLASS ACTION ALLEGATIONS**

62. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

**1681e(b) Inaccuracy Class:**

All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the date of class certification, about whom Defendants sold a report to a third party containing one or more items of information which did not pertain to the individual who was the subject of the report.

**1681g(a)(2) Class:**

All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the date of class certification to whom, following a request from the consumer, Defendant sent a report, document or electronic communication which contained information that it had reported to an insurance company, but did not identify the third party source(s) from which Defendants obtained the information on the report.

63. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

64. Numerosity. Fed. R. Civ. P. 23(a)(1). The Class members within each Class are so numerous that joinder of all is impractical. Upon information and belief Defendants procure and sell hundreds if not thousands of consumers reports each year, and those persons' names and addresses are identifiable through documents maintained by Defendants.

65. Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Classes and predominate over the questions affecting only individual members. The principal questions concern whether Defendants violated the FCRA by failing to follow reasonable procedures to assure the accuracy of information on its report, and/or by misrepresenting the source(s) from which they obtain prescription information.

66. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages as Class members, arising out of Defendants' common course of conduct.

67. Adequacy. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Classes. Her interests are aligned with and are not antagonistic to, the interests of the members of the Classes she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Classes.

68. Predominance and Superiority. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation

presents a potential for inconsistent or contradictory judgments and increases the delay and expenses to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI. CAUSES OF ACTION

### *COUNT I*

**15 U.S.C. § 1681e(b) Plaintiff Individually and on behalf of the 1681e(b) Inaccuracy Class**

69. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

70. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

71. The report Defendants sold to Freedom is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d).

72. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendants are liable for failing to follow reasonable procedures to assure the maximum possible accuracy of the information they sold about Plaintiff and members of the Class, in violation of 15 U.S.C. § 1681e(b).

### *COUNT II*

**15 U.S.C. § 1681g(a)(2) Plaintiff Individually and on behalf of the 1681g(a)(2) Class**

73. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

74. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendants are liable for failing to accurately and clearly disclose the sources from which they obtained the information in consumer file disclosures, in violation of 15 U.S.C. § 1681g(a)(2).

## COUNT III

### Defamation Plaintiff Individually

75. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

76. Defendants made false statements about Plaintiff to prospective insurers that mis-portrayed Plaintiff's physical health and which depicted her as sickly, when in fact she was in excellent health. This caused the insurers to which Plaintiff applied to view her as a health risk when she was not, rendering her ineligible for insurance coverage.

77. Defendants communicated these false statements to one or more prospective insurers.

78. Defendants made these false statements about Plaintiff and communicated them to third parties with malice or willful intent to injure.

79. As a result of Defendants' actions, Plaintiff suffered damages including harm to her reputation, denial of health insurance, time spent addressing the problem, and emotional distress.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of actual, statutory, and punitive damages for Plaintiff and the Classes;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorney's fees and costs; and

E. Such other relief as the Court deems just and proper.

## VIII. TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

**RESPECTFULLY SUBMITTED AND DATED** this March 20, 2025.

*/s/ Michael A. Citron, Esq.*
Michael A. Citron, Esq.
Florida Bar No: 105083
**MAC Legal, P.A.**
*Attorneys for Plaintiff and the Class*
4601 Sheridan Street, Ste. 205
Hollywood, FL 33021
Telephone: (954) 395-2954
Facsimile: (305) 402-0866
Michael@MACLegalPA.com
Service@MACLegalPA.com
*Attorneys for Plaintiff and Proposed Class*


*/s/ Ely R. Levy, Esq.*
Ely R. Levy, Esq.
Florida Bar No.: 773891
**Levy & Partners, PLLC**
3230 Stirling Road, Suite 1
Hollywood, FL 33021
Telephone: (954) 727-8570
Email: elevy@lawlp.com
aylin@lawlp.com
christina@lawlp.com
*Attorneys for Plaintiff and Proposed Class*
